UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| GREGORY L WADE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:22-cv-00386 |
| CAVCO INDUSTRIES, INC., | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Gregory Wade filed this action against Cavco Industries, Inc. ("Cavco") alleging race discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Before the Court is Cavco's motion for summary judgment (Doc. No. 25), to which Wade responded in opposition (Doc. No. 32) and Cavco replied (Doc. No. 35). For the following reasons, the motion will be granted.

## I. BACKGROUND AND UNDISPUTED FACTS[1]

Cavco builds manufactured homes, modular homes, park model RVs, commercial buildings, and vacation cabins, through its subsidiaries, including Fleetwood Homes. On September 9, 2020, Fleetwood Homes hired Wade as a line assembler. Shortly after Wade started working at Cavco, he had a disagreement with a co-worker and reported the disagreement to

---

[1] The facts in this section are undisputed unless noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 27, 31), the exhibits and depositions submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record. For ease of reference, the Court will cite to Wade's Response to Cavco's Statement of Undisputed Facts in Support of Summary Judgment (Doc. No. 31) because that document references several paragraphs with identical numbers.

1

Williams[2], his then supervisor. Soon after, while Wade was walking to the bathroom, he overheard Williams use the N-word during a conversation with Jason Swindle, Wade's supervisor and another employee. He believes that Williams was referencing him even though he does not know anything else Williams said or what anyone else said when he heard the N-word. Neither does Wade recall the exact date of this incident, but he admits he did not report it to anyone at Cavco or Fleetwood. He surmises that the N-word was in reference to him because he had most recently reported to Williams a problem with a co-worker.

On October 7, 2020, Swindle, gave Wade a 15-day performance review. The performance review explained that Wade failed to meet the requirements of his job in various areas, such as safety, quality, knowledge, skills, productivity, and attendance. Swindle gave Wade a detailed plan to improve his performance.

On October 30, 2020, Wade met with Swindle and Human Resources Representative Lindsay Johnston for his 45-day performance review. During that review, Swindle and Johnston informed Wade that his performance remained poor. As a result, Swindle and Johnston made the decision to terminate him. Wade said he thought that the termination decision was because of his race. Swindle denied that his race was a factor. At the time, neither Johnston nor Swindle knew that Wade believed that he had overheard William use the N-word once.

Wade's opposition to the motion relies on affidavits by himself and his co-worker, Charlie Winters. (Doc. Nos. 29, 30). Winters believes that a racist environment existed at the Fleetwood plant. He frequently heard the N-word being used to refer to Wade. (Doc. No. 29 ¶ 4). Specifically, he identifies Ethan Stewart (a senior co-worker and sometimes supervisor) and Bubba

---

[2] The parties did not provide Williams' first name in any of the briefing, so the Court can only refer to him by his last name.

Day (a co-worker) as two employees who used the N-word to refer to Wade. (Id. ¶ 5, 6). In Wade's affidavit, he confirms what Winters says in his affidavit. (Doc. No. 30)

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pennington v. State Farm Mut. Automobile Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk Western Railroad, Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

3

## III. ANALYSIS

### A. Discriminatory Termination

Title VII offers employees protection from a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To defeat a motion for summary judgment in a discrimination case, a plaintiff must adduce direct or circumstantial evidence of discrimination. DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004).

#### i. Direct Evidence

Direct evidence is evidence that, if believed, dictates without any inference that "unlawful discrimination was at least a motivating factor in the employer's actions." Amini v. Oberlin Coll., 440 F.3d 350, 359 (6th Cir. 2006). If the factfinder must draw any inferences, it is not direct evidence. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). Here, Wade relies upon circumstantial evidence as direct evidence by arguing that Williams alleged use of the N-word taints Swindle's and Johnston's decision to terminated him. This is not direct evidence of discrimination. To the contrary, it requires multiple layers of inferences to reach a conclusion of discrimination.

#### ii. Circumstantial Evidence

When a plaintiff relies on circumstantial evidence to prove discrimination, courts apply the three-part burden-shifting framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) The burden is first on the employee to establish a prima facie case of discrimination; then the burden shifts to the employer to articulate a legitimate, non-discriminatory explanation for its action; finally, if the employer does so, the burden shifts back to

the employee to prove pretext. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas, 411 U.S. at 802.

To establish a prima facie case of race discrimination Wade must present proof that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees. Wright v. Murray Guard, Inc., 455 F.3d 702, 706–7 (6th Cir. 2006). Cavco does not dispute the first three prongs. The only dispute is whether Cavco treated Wade differently than similarly situated employees. Cavco correctly argues that Wade has not presented evidence that any similarly situated line assembler received more favorably treatment. (Doc. No. 26 at 5–6). To be deemed similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have: (1) dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Here, Wade has not offered any comparator to satisfy the fourth element of his prima facie case. Wade has failed to establish a prima facie case of discriminatory termination.

Even if Wade established a prima facie case of discrimination, Cavco has articulated a legitimate, non-discriminatory reason for terminating him—his poor performance. See Succarde v. Federal Express Corp., 106 F. App'x 335, 339 (6th Cir. 2004) (poor performance is a legitimate, non-discriminatory reason for termination). Wade's belief that he performed his job in an adequate manner does not mean he met Cavco's performance standards. This is because his subjective egocentric beliefs about his own work performance are insufficient as a matter of law to survive summary judgment. See Mynatt v. Lockheed Martin Energy Systems, Inc., 271 F. App'x 470,

5

477–78 (6th Cir. 2008) ("an employee's evaluation of [her] own performance or qualifications is irrelevant as a matter of law.").

And even if Wade established a prima facie case, Wade's termination claim would still fail because he has not shown that Cavco's proffered reason was pretextual. Proof of pretext consists of evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." Wheat v. Fifth Third Bank, 785 F.3d 230, 240 (6th Cir. 2015). Wade attempts to offer evidence to meet the second method to provide pretext.

Wade contends that a material dispute of fact exists on whether his poor performance or his race was the underlying motivation for his termination. (Doc. No. 33 at 3). Again, he relies on his belief that Williams, his then supervisor, used the N-word after Wade reported an issue with a co-worker. (Doc. No. 30 at 2). Even if true, there is simply no evidence to infer that Williams' racist attitude tainted the termination decision. Williams did not terminate Wade or have input on Wade's review. Indeed, there is nothing in the record that Johnston and Swindle relied on Williams' opinion in their decision to terminate Wade. (Doc. No. 28 at 3). Furthermore, there is nothing before the Court that suggests that Swindle or Johnston condoned Williams' alleged use of the N-word. Wade has not shown any evidence that Cavco's reason for terminating him was pretextual.

There is no evidence from which a reasonable jury could conclude that Wade's race motivated Cavco's termination decision.

B.  **Hostile Work Environment**

Cavco also moves for summary judgment on Wade's hostile work environment claim. Wade may establish a prima facie case of a hostile work environment by showing: (1) he is a

6

member of a protected class; (2) he was subject to unwelcome racial harassment; (3) the harassment was based on his race; (4) the harassment created a hostile work environment; (5) the employer is vicariously liable. Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999). A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21.

The severe or pervasive test has both an objective and subjective element—the conduct must constitute a hostile or abusive work environment both to a reasonable person and the actual victim. Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008). It is determined based upon the totality of circumstances, Williams v. General Motors Corp., 187 F.3d 553 562 (6th Cir. 1999) by considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. Cavco does not dispute the first two prongs. Cavco's motion is directed solely towards the third and fourth elements.

Regarding the third prong, Cavco argues that Wade cannot show that the harassment was based on his race. (Doc. No. 26 at 9). This argument ignores that the N-word has a profound racial connotation. Racial epithets, obviously carry a racial overtone. It is unclear whether Williams referred to Wade when he used the N-word because Wade only overheard the N-word and nothing else. However, Wade contends that the juxtaposition in time of when Wade reported the co-worker altercation and overheard Williams use the N-word shows that Williams was referencing him.

7

(Doc. No. 33 at 4). Considering the evidence in the light most favorable to Wade, the Court will embrace this inference.

As to the fourth prong, Cavco maintains that Wade cannot show that the singular isolated use of the N-word is severe or pervasive. (Doc. No. 26 at 9). The use of the N-word was subjectively offensive to Wade and is objectively offensive in society. See Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1079 (6th Cir. 1999) (there is no reasonable dispute that the use of racist and profane language is offensive); See Collins v. Faurecia Interior Sys., Inc., 737 F. Supp. 2d 792, 807 (E.D. Mich. 2010) (finding the use of the N-word "racially offensive not just to Plaintiff, but to all African Americans."). However, the Court must look at the totality of the circumstances.

Even though Wade overheard Williams use the N-word once, it was not directed at him. In fact, Wade admits that he overheard the word; he does not know the context of the conversation he overheard. The conversation could have condoned or condemned the N-word. Wade simply doesn't know and has offered no other evidence. To be clear, a comment need not be directed at a plaintiff to constitute harassment, Jackson v. Quanex Corp., 191 F.3d 647, 661 (6th Cir. 1999), but the severity is diminished when it is not. Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 501 (6th Cir. 2009) ("If the conduct which forms the basis of the employee's claim is not directed toward him or her, it diminishes the severity."). Moreover, the single use of the N-word is too isolated to establish a hostile work environment claim. Torres v. County of Oakland, 758 F.2d 147, 151 (6th Cir. 1985) (noting that "continuing use of racial or ethnic slurs would violate Title VII"); Turner v. Local 1211, Int'l Union, Auto. Aerospace and Agric. Implement Workers of Am., UAW, 149 F.3d 1184, 1998 WL 385918, at *2 (6th Cir. July 2, 1998) (finding that the single use of the term, though repugnant, is too isolated to establish a hostile work environment claim).

Wade relies upon his own affidavits and a co-worker, Charlie Winters, to support his hostile work environment claim. The affidavits contain some inadmissible evidence for purposes of summary judgment for four reasons. First, Winters fails to provide context on how the N-word was used, whether it was used in the workplace, how often it was used, and whether Winters heard the N-word firsthand. Wade admits to not overhearing any other employees use the N-word. (Doc. No. 30 ¶ 4). See Tenneco Automotive Operating Co. v. Kingdom Auto Parts, 410 Fed. Appx. 841, 848 (6th Cir. 2010) (affidavits that do not specify which statements were made upon knowledge and information and which were made from personal knowledge are inadmissible).

Second, the affidavits contain classic hearsay as Winters is testifying about what Day and Stewart said, and Wade is testifying about what Winters told him. Sperle v. Michigan Department of Corrections, 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."); Fed. R. Civ. P. 56(c)(4). If Stewart used the N-word while he was a supervisor, then the evidence could be admissible as a party opponent. Fed. R. Evid. 801(d)(2). In any event, we do not have any additional context to make that determination.

Third, the assertions in the Winters affidavit allege facts in a conclusory fashion. Winters simply says that a "racist environment existed" at Fleetwood. (Doc. No. 29 at 2). Mitchell v. Toledo Hosp., 964 F.2d 577, 584–85 (6th Cir. 1992) (statements contained in affidavits which are "nothing more than rumors, conclusory allegations and subjective beliefs" are not admissible evidence at the summary judgment stage). Without more, the Court can (and a jury could) only speculate as to the frequency and severity of the behavior.

Lastly, Wade does not state whether he knew that other employees used the N-word during his employment. (Doc. No. 30 at 2). The Sixth Circuit makes it clear that consideration of

9

evidence of "harassment [Wade] became aware of during his employment . . . even if the acts . . . occurred outside of [Wade's] presence" may be considered. Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 335 (6th Cir. 2008). But comments or conduct of which Wade had no knowledge of cannot be said to have made his work environment hostile. See Armstrong v. Whirlpool Corp., 363 F. App'x 317, 329–30 (6th Cir. 2010) ("[D]istrict court correctly excluded evidence of discrimination that [a plaintiff] neither witnessed nor learned of outside the context of this litigation."). Thus, this Court cannot consider the evidence if Wade discovered it after he was terminated.

Viewing the totality of the circumstances in the light most favorable to Wade, no reasonable jury could find that overhearing a singular use of the N-word constitutes a hostile work environment.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE